1
2
3
4
5
6

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE WALLACE,

       Petitioner,

   vs.

RON E. BARNES,

       Respondent.

No.  2:14-cv-0157-MCE-EFB-P

ORDER AND FINDINGS AND
RECOMMENDATIONS

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

entered against him on December 10, 2010, in the Sacramento Superior Court on charges of

first degree murder with special circumstances.  He seeks federal habeas relief on the following

alleged grounds: (1) the evidence introduced at his trial is insufficient to support his conviction;

(2) his trial and appellate counsel rendered ineffective assistance; and (3) prosecutorial

misconduct violated his right to due process.  Upon careful consideration of the record and the

applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

On July 5, 2016, petitioner filed another habeas petition, in which he claims that the trial

court erred in failing to consider his "economic situation" in determining the "payment and

manner" of a restitution fine.  The court will construe petitioner's filing in this regard as a motion

to amend his pending habeas petition to add his restitution claim.  For the reasons set forth below,

the motion to amend must be denied as futile.

1

## I. Background

### A. Events Preceding the Murders

In November 2009, petitioner lived with his girlfriend Bryanna Warren. On the 26th of November, Warren engaged in a physical altercation with Lawanda Shoals at an apartment shared by Shoals and her boyfriend Clifford Brown. Warren left the apartment after the altercation.

On the 28th of November, Warren returned to the apartment and shot both Shoals and Brown, neither fatally. James Turner was rooming with Shoals and Brown at the time and was also present at the time of the shooting. Police responded to the shooting and took information from Brown and Turner. Warren was subsequently arrested on December 2, 2009 and charged with two counts of attempted murder.

After Warren's arrest, petitioner spoke with Antonio Meneses – another resident of his own apartment complex. He told Meneses about Warren's predicament and said that he would "kill a nigga." Meneses understood this to be a joke.

Petitioner subsequently spoke with Brown's mother and asked for Brown's telephone number. Brown's mother dialed her son and allowed petitioner to speak with him. Petitioner stated that they should "squash this" – referring to the dispute that had led to the November 28 shooting. Brown hung up on petitioner.

### B. The Murders of James Turner and Clifford Brown

On December 14, 2009, Shoals, Turner, Brown, and George Clark were at Brown's and Shoals' residence. After midnight, Brown and Shoals were in their bedroom; Turner was in his bedroom; and Clark was in the living room. A loud noise emanated from the kitchen. A man with a shotgun appeared, pointed the gun at Clark, but did not shoot him. Clark subsequently fled the premises.

Brown had walked into the hallway after hearing the noise and, grasping the situation, ran back to the bedroom he shared with Shoals. He pulled Shoals to the floor and attempted to push her under the bed. The shooter fired the shotgun in the direction of Turner's room and then shot Brown twice. The shooter then left.

/////

Shoals dialed 911 at approximately 1:00 a.m.  Both Brown and Turner died at the scene. Turner had sustained a shotgun wound to his face and another to his back.  Several pellets had also gone through his forearm.  Brown had taken two shotgun wounds – one to his head and another to his chest.

Shoals described the shooter as wearing a black sweat suit with a ski mask over his face. She described him as bulky in the chest area and estimated that he was between 5'9" and 5'11". Both Shoals and Clark described the shooter as an African-American man dressed in black.  After Clark was shown a photograph of petitioner, he testified that the shooter was the same size.

### C.  The Murder Investigation

Police determined that no items of value had been removed from the residence.  Nothing indicated that the killings were connected to monetary debts or the sale of narcotics.

A search of petitioner's apartment uncovered a complete copy of the police report on Warren's November shooting.  The report included addresses and contact information for Shoals, Brown, and Turner.  Petitioner denied possessing any firearms or ammunition, but .9 millimeter bullets and a holster were found in his apartment.

Petitioner denied involvement, and told police that he had not left his residence on December 14, 2009.  He did admit to leaving his residence at two or three in the morning on December 15, 2009.  Petitioner claimed that he had simply driven out around the apartment complex before returning to his residence. Despite his claims, petitioner appeared on a Walmart video surveillance tape on December 14, 2009.  Dressed in black, he arrived at approximately 11:24 p.m. and left at approximately 11:50 p.m.

Police seized petitioner's clothing.  A black hooded sweatshirt and black sweatpants were discovered in a hamper in his bedroom.  A black vest jacket and another black sweatshirt were also found.  Several articles of clothing had gunshot residue.

A search of petitioner's computer determined that he had searched for "Clifford Brown" on November 28, a route from petitioner's apartment to the victims' residence on December 9, and searches for news reports on the shooting perpetrated by Warren.

/////

3

## D.    Petitioner's Defense

Petitioner did not testify at trial.  His counsel argued that the inferences urged by the prosecutor were unreasonable or pointed to both guilt and innocence.  He explained that the gunshot residue could have come from contact with Warren after she committed the November 28 shooting.  Counsel also noted that, although petitioner had been seen at his apartment complex with two pistols, no one had seen him in possession of a shotgun.

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) (AEDPA) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent

may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 293 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no

reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

## III. Petitioner's Claims

### A. Sufficiency of the Evidence

In his first and second grounds for relief, petitioner raises claims that this court construes as a challenge to the sufficiency of the evidence to support his conviction for first degree murder. In ground one, petitioner argues that the California Court of Appeal "used an incorrect standard to determine there was sufficient evidence of identity to satisfy federal and state due process." ECF No. 67 at 19. He argues that there was no direct evidence he was the shooter and that there "was not sufficient substantial circumstantial evidence to logically draw an inference of guilt, but the court of appeal has set forth a contrary view." *Id.*

Petitioner's second ground for relief is described as follows:

> The Third District brought forth a new method of analyzing the sufficiency of the evidence in petitioner's case. The Third District used a "no evidence" determination in the sense that it found

inferences to guilt where individually each was conjectural or speculative but because they did not rule out guilt the evidence was sufficient and this violated Mr. Wallace Federal and state right to due process.

*Id.* at 20. In the "supporting facts" section of his second ground for relief, petitioner argues that the California Court of Appeal failed to examine the "entire record" to determine whether the evidence was sufficient to support his conviction, but instead focused only on the testimony and evidence that supported a guilty finding. He points out instances where, in his opinion, witnesses testified falsely, certain testimony was inconsistent with other testimony, the prosecutor "presented and argued false evidence," and his trial counsel's arguments and statements caused the jurors to focus on inculpatory evidence presented by the prosecution and not on evidence of his innocence. *Id.* at 20-22. For instance, petitioner argues: (1) Shoals testified falsely that she was on the floor and hidden from the gunman's sight, which was inconsistent with the testimony of Officer Kawasaki that Shoals was sitting upright with her back against the wall when he looked into the bedroom; (2) the prosecutor "presented and argued false evidence" that Brown was shot while he was in his bedroom, which is inconsistent with Shoals' testimony that she heard a gunshot when Brown was out of the bedroom; (3) Shoals testified falsely that she "heard the first gunshot while Brown was in the bedroom after Brown hid her;" (4) Shoals testified and the prosecutor argued the "false evidence" that the gunman shot Brown from the bedroom doorway and then walked into the bedroom and shot Brown in the head; (5) the testimony of the prosecution pathologist that Brown was shot from a distance of 2-3 feet "destroyed" Shoals' testimony and the prosecutor's argument that the gunman shot Brown from the bedroom doorway and then walked up to Brown and shot him in the head; (6) Officer Chin's testimony that he could see blood all over the bedroom and Shoals sitting upright, but could not see Brown's body, was inconsistent with other testimony that Brown was shot in the bedroom as opposed to being shot "before re-entering his bedroom;" (7) his trial counsel's arguments regarding blood spatter improperly caused the jury to focus on the gunshot residue that was found on petitioner's clothes instead of on the fact that if Brown was shot at a distance of 2-3 feet there should have been blood

8

spatter on petitioner's clothes and there wasn't any; and (8) his trial counsel improperly asked the jury "to view all the gruesome photos of the victims." *Id.* at 20-27.

### 1. State Court Decision

The California Court of Appeal denied petitioner's claim that the evidence was insufficient to support the jury's verdict. The court reasoned as follows:

#### A. Sufficiency of the Evidence

> There is no dispute about the scope of appellate review of a challenge to the sufficiency of the evidence. A challenger faces an extraordinary burden on appeal to demonstrate that "no rational trier of fact could have agreed with the jury." (*Cavazos v. Smith* (2011) ___ U.S. ___, ___ [181 L.Ed.2d 311, 313].) We must "'"review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - that is, evidence which is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 396.)
>
> Because the prosecution's case rests entirely on circumstantial evidence, defendant reminds us that a reasonable inference "'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work . . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.' [Citation.]" (*People v. Morris* (1988) 46 Cal.3d 1, 21, *disapproved on another ground* in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5.) He dissects each piece of evidence in a futile attempt to expose fatal weaknesses in the inferences the jury was asked to, and presumably did, draw from the evidence.
>
> We need not determine whether any of the evidence independently would be sufficient to support the judgment. Defendant argues, for example, that the "clothes were not substantial evidence, and the Walmart recordings that [defendant] wore black clothing at 11:30 p.m. also do not constitute substantial evidence." The question is not whether the clothes or the Walmart tapes or the gunshot residue or the directions to the victims' house or the computer searches constitute substantial evidence, but whether cumulatively all the evidence is sufficient to support the judgment. Defendant posits that innocent circumstances were made to look incriminating by piling one conjecture upon another conjecture. (*People v. Flores* (1943) 58 Cal.App.2d 764, 769–770.) We disagree. This case was not built on conjecture, but on abundant circumstantial evidence that, when viewed as a whole, gave rise to the reasonable inference that defendant was the shooter and he killed two potential witnesses in his girlfriend's upcoming trial.
>
> Our recitation of the facts presents a compelling distillation of the evidence that defendant had the motive to kill Turner and Brown,

two witnesses to his girlfriend's attempted murders; that he had the same body type and ethnicity as the shooter; that he was wearing the same kind of clothes as the shooter a short time before the murders; that gunshot residue was found on his clothes; that he had no alibi during the time the murders occurred; that he lied to the police; that he had obtained a police report on his girlfriend's shootings and knew who the witnesses were and where they lived; and that he had contacted Brown and told him of his desire to "squash" the case. Defendant argues on appeal, as he did in closing argument before the jury, weaknesses in the evidence and why the inferences the prosecution urged the jury to make should be rejected. It was the jury's prerogative, however, and not ours to accept or reject defendant's arguments and determine whether the inferences were indeed reasonable.

Although defendant recites the appropriate standard of review, he fails to apply it. We acknowledge any number of weaknesses in the evidence, including the lack of blood on defendant's clothes, the somewhat improbable possibility the gunshot residue was transferred to defendant's clothes, the fact that there are other African American males who are overweight and wear black clothing, and that a protective lover might lie, investigate, or cover up for his girl without being willing to kill witnesses against her, but we do not agree that the jury's verdict is irrational or premised on mere conjecture and speculation. To the contrary, the evidence is circumstantial, but it is compelling. It is neither physically impossible nor inherently improbable. Rather, defendant fit the physical description of the assailant, he had the opportunity and the means to commit the shooting, and he certainly had the motive to eliminate the witnesses to his girlfriend's shootings. Indeed, he chose not to shoot George Clark, a guest at Brown's house who was not a witness to the earlier shootings, and proceeded to shoot both Turner and Brown, both of whom had been witnesses, twice at very close range. Fortunately for Shoals, the only remaining witness, Brown successfully hid her from defendant before Brown himself was shot and killed. All said, there is ample evidence to support the jury verdicts.

*People v. Wallace*, No. C066938, 2012 WL 5207027, at *3-4 (Cal. App. 3d Dist. Oct. 23, 2012).

## 2. <u>Applicable Legal Standards</u>

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a

10

reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, ___ U.S. ___, 132 S.Ct. 2, *4 (2011). Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16.

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct. 2060, 2064 (2012) ( per curiam ) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.1995) (citation omitted).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Because this case is governed by the AEDPA, this court owes a "double dose of deference" to the decision of the state court. *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th Cir. 2011), *cert. denied* ___ U.S. ___, 132 S.Ct. 2723 (2012)). *See also Johnson*, 132 S.Ct. at 2062 ("*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.").

### 3. **Analysis**

In his claim before this court, petitioner points to weaknesses in the trial evidence by using evidentiary examples that are different than the examples he cited in his claim before the California Court of Appeal. However, his basic argument is the same: those weaknesses demonstrate that the evidence against him was insufficient to support his conviction. However, after reviewing the record in the light most favorable to the jury's verdict, this court concludes

that there was sufficient evidence introduced at petitioner's trial to support his conviction for first degree murder.

If the record supports conflicting inferences, the reviewing court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326). In evaluating the evidence presented at trial, this court may not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Instead, as noted above, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319. Further, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial. This court may not "impinge[ ] on the jury's role as factfinder," or engage in "fine-grained factual parsing." *Johnson*, 132 S.Ct. at 2065. As the Ninth Circuit has explained, "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). Under *Jackson*, the Court need not find that the conclusion of guilt was compelled, only that it rationally could have been reached. *Drayden v. White*, 232 F.3d 704, 709-10 (9th Cir. 2000).

Even though there was conflicting evidence in this case regarding when and where Brown was shot and whether petitioner's physical description matched that of the shooter, the evidence, when viewed as a whole, supports the jury's conclusion that petitioner was the person who committed the murders of Brown and Turner. As noted by the California Court of Appeal, there was significant evidence that petitioner had the motive, opportunity, and intent to commit these crimes. Which version of the events was true was up to the jury alone to decide. *Johnson*, 132 S.Ct. at 2064. Although the evidence was circumstantial, the jury was entitled to rely on that evidence to find petitioner guilty. Further, although petitioner claims that some of the testimony was "false" because it was inconsistent with other testimony or evidence of record, there is no evidence to support this assertion. There is also no evidence that the prosecutor knew any testimony was false or that any material evidence was withheld from the jury.

/////

12

Petitioner's assertion in the traverse that "these murders were not witness killings concerning Petitioner's girlfriend case, but for some other reason such as drug dealing or drug using" (ECF No. 75 at 38) is based on speculation and has no support in the evidence. The court also notes that the arguments or statements of counsel are not evidence, and petitioner's jury was so instructed. Clerk's Transcript on Appeal (CT) at 499 (instructing that "[n]othing that the attorneys say is evidence."). Thus, statements made by petitioner's trial counsel and the prosecutor were not part of the evidence considered by the jury in determining whether petitioner was guilty of the murders. *See Kansas v. Marsh*, 548 U.S. 163, 179 (2006) (jurors are presumed to have followed jury instructions); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (same); *Fields v. Brown*, 503 F.3d 755, 782 (9th Cir. 2007) (same).

The Court of Appeal used the correct standard to evaluate petitioner's claim of insufficient evidence and applied that standard appropriately. The decision of the California Court of Appeal that a rational trier of fact could have found beyond a reasonable doubt that petitioner was guilty of the murders of Brown and Turner is not an unreasonable application of *In re Winship* and *Jackson* to the facts of this case. Accordingly, petitioner is not entitled to federal habeas relief on his claims of insufficient evidence.

### B. Ineffective Assistance of Trial and Appellate Counsel

In his next ground for relief, petitioner claims that his trial counsel rendered ineffective assistance through numerous errors and that his appellate counsel rendered ineffective assistance in failing to raise a claim of ineffective assistance of trial counsel on appeal. He argues:

> Petitioner's trial counsel so utterly failed to defend against the charges that the trial was the functional equivalent of a guilty plea, rendering counsel's representation presumptively inadequate. That Petitioner is actual innocent of the murders. And that appeal counsel failed to argue effective counsel.

ECF No. 67 at 23.

Petitioner describes numerous perceived errors by trial counsel, as follows: (1) "trial counsel was aware that witness Shoals heard the first gunshot while Brown was out of the west bedroom, but he allowed witness Shoals to testify falsely that the first gunshot was into victim Turner's bedroom after Brown hid her (Shoals)" (*id.* at 23); (2) trial counsel allowed Shoals to

testify that she was laying on the floor looking under the bed at the gunman's feet even though counsel was aware that Officer Kawasaki, who was the first officer on the scene, saw Shoals sitting upright against the wall "with Brown across her legs in plain view and not hid" (*id.*); (3) trial counsel "refused" to cross-examine Officer Kawasaki and improperly argued to the jury that Shoals was hidden from the gunman (*id.*); (4) trial counsel allowed Shoals to testify and the prosecutor to argue that the gunman came into the bedroom doorway and shot Brown in the chest and then walked to the foot of the bed and shot Brown in the head even though counsel was aware that "if pathologist Fiore testified that Brown was in the same distance as he was when the gunman shot Brown in the chest and head which was 2 to 3 feet away from the barrel of the shotgun, that Brown was shot at two locations of the house" (*id.* at 24); (5) trial counsel "allowed the prosecutor" to hide from petitioner and the jury the "heavy blood puddles" that were on top of Brown's dresser in the master bedroom, which would have demonstrated that Brown was fatally wounded before he re-entered his bedroom (*id.*); (6) trial counsel failed to present evidence that "lead CSI D. Noonan" seized a shotgun pellet from Brown's living room wall, thereby preventing the jury from knowing that Brown was first shot in the chest while he was in the living room with George Clark, who "also testified falsely to the events of the murders" (*id.* at 25); (7) trial counsel failed to subpoena Nga Thi Nguyen, who told a police officer that she saw Clark and another male walk into Brown's house a few minutes before the shootings, which would have provided evidence that "there was a fifth person was with Clark either witness the shooting of Brown first in the living room or either was a part of committing the murders because Clark lied about the events of the murders" (*id.*); (8) trial counsel "lied at petitioners *Marsden* hearing that witness Nguyen made no such statement" (*id.*); (9) trial counsel "allowed the prosecutor" to hide from the jury and the petitioner that there were photographs of blood spatter against the east wall of Brown's west bedroom, which would have absolved petitioner of the murders (*id.* at 25-26); (10) trial counsel failed to point out to the jury "the pellet under item 4 on top side of Shoals side of the bed" and failed to "present that if Brown was shot in his chest facing south then why is the pellet that exited his back in front of him" (*id.* at 26); (11) trial counsel allowed the state pathologist to testify falsely that Brown did not have an exit wound from his head injury "so that

14

the jury wouldn't know that Brown was facing the east wall with blood spatter against and that the pellet under item 4 on Shoals side of the bed exited from the right side of Browns head" (*id.*); (12) trial counsel failed to disclose to petitioner and to the jury that there was a report written by Detective K. Campbell indicating that "Shoals stated that Brown was wounded before coming in the bedroom and that the gunman was in their room while Shoals was on the bed" (*id.* at 26-27); and (13) trial counsel "made the jury believe" that no black shoes were seized from petitioner's apartment, even though in fact black shoes were seized from his apartment that were smaller than the shoes that left the footprint on the kitchen door at the crime scene (*id.* at 27).

Petitioner raised these claims in three separate petitions for a writ of habeas corpus filed in the California Supreme Court. Resp't's Lod. Doc. entitled "Petition for Writ of Habeas Corpus, California Supreme Court Case No. S214393, November 1, 2013;" Resp't's Lod. Doc. entitled "Petition for Writ of Habeas Corpus, Case No. S219853, July 10, 2014;" and Resp't's Lod. Doc. entitled "Petition for Writ of Habeas Corpus, Case No. S223942, January 20, 2015." The petition in case No. S214393 was summarily denied and the other two petitions were denied with a citation to *In re Clark*, 5 Cal.4th 750, 767-69 (1993). Resp't's Lod. Doc. entitled "Order Denying Petition for Writ of Habeas Corpus Case No. S214393, February 19, 2014;" Resp't's Lod. Doc. entitled "Order Denying Petition for Writ of Habeas Corpus, Case No. S219853, October 1, 2014;" and Resp't's Lod. Doc. entitled "Order Denying Petition for Writ of Habeas Corpus, Case No. S223942, March 25, 2015." Respondent argues that the Supreme Court's citation to *In re Clark* constitutes a procedural bar which precludes this court from addressing the merits of petitioner's claims of ineffective assistance of counsel.

As a general rule, "[a] federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 314 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53 (2009). However, a reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim. *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *see also Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits

issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same"); *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (noting that although the question of procedural default should ordinarily be considered first, a reviewing court need not do so invariably, especially when the issue turns on difficult questions of state law). Where deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claim on the merits and forgo an analysis of procedural default. *See Franklin*, 290 F.3d at 1232 (citing *Lambrix*, 520 U.S. at 525).

Under the circumstances presented here, the court finds that petitioner's claims of ineffective assistance of trial and appellate counsel can be resolved more easily by addressing them on the merits. Accordingly, the court will assume that these claims are not defaulted. However, for the reasons set forth below, the court concludes that petitioner is not entitled to habeas relief on his claims of ineffective assistance of trial and appellate counsel, under either a de novo or the AEDPA standard of review.

### 1. **Applicable Legal Principles**

The applicable legal standards for a claim of ineffective assistance of counsel are set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 114 (quoting *Strickland*, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of

16

reasonable professional assistance." *Strickland*, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 189. A reviewing court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") There is, of course, no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434. In order to establish prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. *Id.* at 1434 n.9.

17

## 2. **Analysis**

Petitioner's claims of ineffective assistance of counsel should be denied for lack of prejudice. As explained above, the jury heard all of the testimony, including testimony that tended to be exculpatory, and decided that petitioner was guilty of the two murders. The jury knew, for instance, that petitioner did not have blood on his clothes. The jury also knew that there was no direct evidence that petitioner was the shooter. However, even if trial counsel had pointed out some of the inconsistencies described by petitioner, petitioner has failed to show a reasonable probability that the jury would have come to a different result. Regardless of where or how Brown was shot, the evidence as a whole was compelling that petitioner was the person who killed Brown and Turner. Given all of the circumstantial evidence against petitioner, trial counsel's errors, as they are alleged by petitioner, do not "undermine confidence in the outcome" of these proceedings.

The court notes that defense counsel does not have the ability or the duty to control how a witness will testify or to "force" the prosecutor to engage in any particular actions. Further, "appointed counsel, and not his client, is in charge of the choice of trial tactics and the theory of defense." *United States v. Wadsworth*, 830 F. 2d 1500, 1509 (9th Cir. 1987) (citing *Henry v. Mississippi*, 379 U.S. 443 (1965)). "The lawyer has--and must have--full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). It was incumbent on petitioner's trial counsel to decide what evidence was introduced and which witnesses to call. The fact that petitioner disagrees with counsel's conduct of the trial does not demonstrate that his trial counsel's performance was ineffective. This court has reviewed the trial record and finds no evidence that trial counsel's actions constituted a violation of the *Strickland* standards or resulted in prejudice. Accordingly, petitioner is not entitled to relief on these claims of ineffective assistance of trial counsel.

Nor is petitioner entitled to relief on his claim that his appellate counsel rendered ineffective assistance in failing to raise a claim of ineffective assistance of trial counsel on appeal. As set forth above, there is no obligation to raise meritless arguments on a client's behalf.

/////

Appellate counsel's decision to press claims with arguably more merit than the ineffective assistance of trial counsel claims now suggested by petitioner was well "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). *See also Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome"). The United States Supreme Court has stated that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288. This is because "[a] brief that raises every colorable issue runs the risk of burying good arguments - those that, in the words of the great advocate John W. Davis, 'go for the jugular.'" *Barnes*, 463 U.S. at 751-52.

For the foregoing reasons, petitioner is not entitled to habeas relief on his claims of ineffective assistance of counsel.

## C. Prosecutorial Misconduct

In his final ground for relief, petitioner claims that the prosecutor committed misconduct by introducing knowingly false testimony. ECF No. 67 at 28. Specifically, he alleges the prosecutor: (1) "allowed" Shoals to testify that she was on the floor, hidden from the gunman's view, knowing that Officer Kawasaki saw Shoals sitting upright; (2) "hid" the pools of blood on top of the master dresser "so that the jury wouldn't know that Brown was fatally shot in the chest before re-entering his bedroom;" and (3) "hid" evidence of blood spatter against Brown's "east wall" so that "petitioner wouldn't be absolve of the murders" *Id.* In support of petitioner's claims in this regard, petitioner has attached photographs of the crime scene, his slippers, and blood spatters on Shoals. *Id.* at 36-54. Petitioner argues:

> from the above exhibits it shows that Brown was not shot by a gunman who stood in the doorway of the bedroom while Brown was on the north side of the bed hidding [sic] witness Shoals (1RT 211-216). Any one looking at these colored paper photos would know that Brown came in that bedroom fatally wounded bleeding

out over the dresser, in front of the dresser, to around the north side
of the bed.

*Id.* at 32-33.  In the traverse, petitioner makes other allegations against the prosecutor, including:
(1) "the prosecutor would have been aware that the crime scene was althered [sic] to support the
events of Shoals false testimony . . . that Brown was shot twice while in his bedroom" ECF No.
75 at 49; and the prosecutor failed to correct the pathologist when she testified that "Brown had
no exit wound from his head injury."  *Id.* at 50.

Petitioner raised his claims of prosecutorial misconduct in a petition for writ of habeas
corpus filed in the California Supreme Court in case No. S214393.  The Supreme Court
summarily denied that petition.  Accordingly, this court must review the state court record to
determine whether there was any "reasonable basis for the state court to deny relief." *Richter*,
562 U.S. at 98.

### 1. <u>Applicable Law</u>

A criminal defendant's due process rights are violated when a prosecutor's misconduct
renders a trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Claims of
prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to
determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the
resulting conviction a denial of due process.'"  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.
1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v.
DeChristoforo*, 416 U.S. 637, 643 (1974); *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).
When prosecutorial conduct is called in question, the issue is whether, considered in the context
of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to
judge the evidence fairly. *United States v. Young*, 470 U.S. 1, 11 (1985).

Relief on such claims is limited to cases in which the petitioner can establish that
prosecutorial misconduct resulted in actual prejudice. *Darden*, 477 U.S. at 181-83. *See also
Towery*, 641 F.3d at 307 ("When a state court has found a constitutional error to be harmless
beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's
determination is objectively unreasonable").  Prosecutorial misconduct violates due process when

it has a substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

A violation of a defendant's rights occurs if the government knowingly uses false evidence in obtaining a conviction. *Giglio v. United States*, 405 U.S. 150, 153-54 (1971); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). There are several components to establishing a claim for relief based on the prosecutor's introduction of perjured testimony at trial. First, the petitioner must establish that the testimony was false. *United States v. Polizzi*, 801 F.2d 1543, 1549-50 (9th Cir. 1986). Second, the petitioner must demonstrate that the prosecution knowingly used the perjured testimony. *Id.* Finally, the petitioner must show that the false testimony was material. *United States v. Juno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). False evidence is material "if there is any reasonable likelihood that the false [evidence] could have affected the judgment of the jury." *Hein v. Sullivan*, 601 F.3d 897, 908 (9th Cir. 2010) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985). Mere speculation regarding these factors is insufficient to meet petitioner's burden. *United States v. Aichele*, 941 F.2d 761, 766 (9th Cir. 1991).

### 2. Analysis

Petitioner has failed to demonstrate that the prosecutor committed misconduct or that any misconduct resulted in prejudice. First, there is no evidence that any of the trial testimony was false, or that the prosecutor knew it was false. Under these circumstances, the prosecutor did not commit misconduct in failing to direct or dictate the testimony given by any trial witness. Nor is there evidence that the prosecutor withheld from the defense that there were blood stains on the dresser and blood spatter on the east wall. On the contrary, petitioner alleges that his trial counsel was aware of these facts but failed to tell petitioner or the jury. ECF No. 67 at 24-25.

Given the substantial evidence that petitioner was the person who shot Brown and Turner, the prosecutor's failure to prevent Shoals from testifying that she was hidden from the gunman's view, or her failure to ensure the jury was informed there was blood on the dresser and the east wall of the other bedroom, or that Brown had an exit wound from his head injury, would not have had a substantial and injurious effect on the verdict in this case. To the extent petitioner is arguing that if the witnesses had testified truthfully it would be apparent that the shooter would

have had blood on his clothes, the jury was aware that this was one of the weaknesses in the evidence. Petitioner's trial counsel argued extensively in his closing argument that petitioner should have had blood on his clothing if he were the shooter. Reporter's Transcript on Appeal (RT) at 1091-95. The jury heard all of the evidence that raised questions about whether petitioner was the shooter and found petitioner guilty of the murders even though he did not have any blood on his clothing.

The decision of the California Supreme Court denying petitioner's claim of prosecutorial misconduct is not contrary to or an unreasonable application of United States Supreme Court authority. Certainly it is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103." Accordingly, petitioner is not entitled to relief on this claim.[2]

/////

/////

/////

_____

[2] Although petitioner states in the traverse that his "federal writ presents an actual innocent claim," (ECF No. 75 at 7), he has not raised a freestanding claim of actual innocence in the petition before this court. Rather, he claims that his claims for relief are not subject to a procedural default because he is innocent. *See Schlup v. Delo*, 513 U.S. 298 (1995) (a federal habeas petitioner "can overcome a procedural default, including a failure to comply with the statute of limitations, by demonstrating actual innocence of the crime underlying his conviction"). As set forth above, this court has assumed that petitioner's claims are not procedurally defaulted and has addressed all of the claims on the merits. Even if petitioner were raising a claim of actual innocence, he is not entitled to relief. The standard for establishing entitlement to relief on a freestanding claim of actual innocence is "'extraordinarily high.'" *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir.1997) (en banc) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). In order to prevail on such a claim, a petitioner "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Id. See also Cooper v. Brown*, 510 F.3d 870, 923 (9th Cir. 2007) (same); *Boyde v. Brown*, 404 F.3d 1159, 1168 (9th Cir. 2005) (same). Petitioner has failed to make a showing that he is probably innocent of the murders of Turner and Brown. Petitioner also appears to be raising numerous additional claims in the traverse, alleging entirely new instances of insufficient evidence, ineffective assistance of counsel, and prosecutorial misconduct. *See* ECF No. 75 at 52-67. To the extent petitioner is attempting to belatedly raise new claims in the traverse, relief should be denied. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds for relief); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued specifically and distinctly in a party's opening brief"). In any event, petitioner's allegations in the traverse fail to demonstrate that the evidence supporting the jury verdict was insufficient, that his trial or appellate counsel rendered ineffective assistance, or that the prosecutor committed prejudicial misconduct. Accordingly, any such claims should be denied.

### D. Pending Motions

#### 1. <u>Motion to Amend/Restitution Fine</u>

In his habeas petition filed on July 5, 2016, petitioner claims that the trial court erred in imposing a $10,000 restitution fine without considering his "economic situation" and ability to pay such a fine. ECF No. 80 at 4-15. Petitioner argues that he does not have the ability to pay a restitution fine from his prison wages or even after he is released. *Id.* at 13. He contends that his sentence should be modified by striking the $10,000 restitution fine and reducing it to $200.00. *Id.* at 15. A review of the record reflects that petitioner was assessed a $10,000 restitution fine pursuant to Cal. Penal Code § 1202.4(b). *Id.* at 30, 32. The court will construe this filing as a motion to amend petitioner's pending habeas petition to add a challenge to his restitution fine. *See Woods v. Carey*, 525 F.3d 886, 889 (9th Cir. 2008) (when a second habeas petition is filed before adjudication of an initial habeas petition, the court should construe the second petition as a motion to amend the pending petition).

The federal writ of habeas corpus is only available to persons "in custody" at the time the petition is filed. 28 U.S.C. §§ 2241(c), 2254(a); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). This requirement is jurisdictional. *Id.* The Ninth Circuit has explicitly held that "an attack on a restitution order is not an attack on the execution of a custodial sentence . . . [Thus,] § 2254(a) does not confer jurisdiction over a challenge to a restitution order." *Bailey v. Hill*, 599 F.3d 976, 983 (9th Cir. 2010) (citing *United States v. Kramer*, 195 F.3d 1129 (9th Cir. 1999)). Because petitioner's claim challenges only the restitution portion of his sentence, the "custody" requirement of Section 2254(a) is not satisfied and the court does not have jurisdiction to entertain this claim. In addition, to the extent petitioner's claim challenging his restitution order concern violations of state law, petitioner has failed to state a cognizable federal habeas claim. As set forth above, federal habeas relief does not lie for violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point").

/////

23

For the foregoing reasons, petitioner's challenge to his restitution fine in this federal habeas action lacks merit. Accordingly, his request to amend his pending habeas petition to add this claim is futile and should be denied on that basis.

### 2. <u>Motion for Discovery</u>

Habeas petitioners are not entitled to discovery as a matter of course and, instead, may pursue discovery only upon a showing of good cause and in the discretion of the court. *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999). In his lengthy motion, petitioner identifies nine items of discovery which range from surveillance video to law enforcement officer's "raw reports." ECF No. 81 at 2-3. Petitioner argues that he "has always contended that he was actually innocent" of the crime he was convicted of and that "false evidence was underhandedly used against him by the state to support the conviction." *Id.* at 4. He goes on to criticize the state's theory of the case and argue that "the discovery that he seeks in this motion will prove beyond doubt that the prosecution Donell Slivka, [t]rial attorney Jessie Morris, Judge Patrick Marlette, and the Sacramento police officers worked in collusion to gain an illegal conviction against petitioner." *Id.* at 13.

The court concludes that petitioner has not shown good cause for allowing him to engage in wide-ranging discovery. First, as noted *supra*, the court has already concluded that his habeas claims do not entitled him to relief. Second, habeas petitioners should not be granted leave to engage in discovery as a "fishing expedition . . . to explore their case in search of its existence." *Rich*, 187 F.3d at 1067 (quoting *Calderon v. U.S.D.C. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996)). Petitioner is not seeking discovery for some limited purpose related to the claims in his petition; rather he appears to be trying to collect wide-ranging evidence in an attempt to re-try his case. This intention is underscored by petitioner's broad and unsupported allegation that the prosecutor, law enforcement officers, and the trial judge colluded to illegally convict him. ECF No. 81 at 13.

Based on the foregoing, the motion is denied.

/////

/////

### 3. <u>**Motion for Finding of Actual Innocence**</u>

On April 24, 2017, months after the relevant petition for habeas corpus was filed, petitioner filed a motion for finding of factual innocence. ECF No. 82. Therein, he asks the court to find him "factually innocent" based on a "preponderance of the evidence presented . . . that the crime with which he was charged was not committed by him." ECF No. 82 at 1. Petitioner cites, as the legal basis for his motion, California Senate Bill 1134 which, *inter alia*, amends Cal. Penal Code § 1485.55 to read:

> In a contested or uncontested proceeding, if the court grants a writ of habeas corpus and did not find the person factually innocent in the habeas corpus proceedings, the petitioner may move for a finding of factual innocence by a preponderance of the evidence that the crime with which he or she was charged was either not committed at all or, if committed, was not committed by him or her.

Cal. Penal Code § 1485.55 (b). He also cites Assembly Bill 1909 which amends Cal. Penal Code § 141 and pertains to the falsification of evidence. Cal. Penal Code § 141. These citations underscore changes in California state law and, to the extent either entitles petitioner to any relief, must be raised in the appropriate state court. As the court has already noted, petitioner did not raise an actual innocence claim in his current federal petition. *See supra* n. 2. This motion is denied.

### 4. <u>**Motion to Amend Petition**</u>

On June 21, 2017, petitioner filed a new habeas petition in case in *Wallace v. The People of the State of California*, 2:17-cv-1270 – KJN. His new petition was construed as motion to amend and filed this in this action. ECF No. 85.

A responsive pleading has been filed in this case and, accordingly, petitioner must obtain leave of court to file an amended petition. *See Anthony v. Cambra*, 236 F.3d 568, 577 (9th Cir. 2000). Habeas petitions may be amended or supplemented as provided in the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 2242; *Anthony*, 236 F.3d at 576. And although Federal Rule of Civil Procedure 15(a) requires that leave to amend "shall be freely given when justice so requires," the court should also weigh whether there is any evidence of undue delay, bad faith or dilatory motives with respect to the filing of an amendment when determining whether leave to

1  amend should be granted. *See Anthony*, 236 F.3d at 577-78. Here, the court concludes that

2  granting petitioner leave to amend would be futile because his claims are untimely.

3      A federal habeas petition must be filed within one year of: (1) the date the state court

4  judgment became final, either by conclusion of direct review or the expiration of time to seek

5  such review; (2) the date on which an impediment to filing created by state action is removed (if

6  the applicant was prevented from filing by that action); (3) the date on which a constitutional

7  right is newly recognized by the Supreme Court and made retroactive on collateral review; or (4)

8  the date on which the factual predicate of the claim could have been recognized through the

9  exercise of due diligence. *See* 28 U.S.C. § 2244(d). In most cases the statute of limitations

10  begins to run after the state court judgment becomes final pursuant to 28 U.S.C. § 2244(d)(1).

11      The original petition filed with this court indicates that the underlying conviction occurred

12  on September 30, 2010. ECF No. 1 at 1. Petitioner appealed and the conviction was affirmed by

13  the court of appeal on October 23, 2012 (Resp't's Lod. Doc. entitled "California Court of Appeal,

14  Unpublished Opinion") and his petition for review was denied by the California Supreme Court

15  on January 30, 2013 (Resp't's Lod. Doc. entitled "Order Denying Petition for Review, California

16  Supreme Court Case No. S206808). Petitioner filed numerous state habeas petitions, the latest of

17  which was denied by the California Supreme Court in March of 2015. *See* Resp't's Lod. Doc.

18  entitled "Order Denying Petition for Writ of Habeas Corpus, Case No. S223942, March 25,

19  2015." Assuming that petitioner was entitled to continuous tolling until March 25, 2015, his

20  newly added claims – which were filed more than two years later on June 7, 2017[3] - would still be

21  untimely. *See Wallace*, 2:17-cv-1270-KJN, ECF No. 1 at 46.

22      The claims might be saved if they could be construed to relate to back to a timely petition.

23  The Ninth Circuit has held that Federal Rule of Civil Procedure 15(c) applies to a petitioner's

24  attempt to amend his petition to add newly exhausted claims. *See Anthony*, 236 F.3d at 576. The

25  claims may only relate back if respondent was on notice of them before the statute of limitations

26

27      [3] *See Houston v. Lack*, 487 U.S. 266 (1988) (establishing rule that a prisoner's court
document is deemed filed on the date the prisoner delivered the document to prison officials for

28  mailing).

period expired. *Id.* at 576-77. Additionally, the Supreme Court has explicitly rejected the proposition that a claim relates back solely on the basis that it arises from the same "trial, conviction, or sentence." *See Mayle v. Felix*, 545 U.S. 644, 664 (2005) (internal quotation marks omitted). The motion to amend raises three new claims, namely: (1) that the trial judge erred in denying petitioner discovery; (2) that the prosecutor violated his obligation under *Brady v. Maryland*, 373 U.S. 83 (1963) by withholding evidence that was in possession of investigative agencies and to which the state had access; and (3) that the appellate court erred in denying petitioner's writ relief concerning the trial judge's denial of discovery. ECF No. 85 at 10-22. The court finds that none of these claims relate back.

The original petition, filed on January 14, 2014, raised claims that: (1) the court of appeal used an incorrect standard to determine whether sufficient evidence supported his conviction; (2) the court of appeal erroneously used a new method of analyzing the sufficiency of the evidence underlying his conviction; (3) his trial counsel "utterly failed to defendant against the charges" and appellate counsel failed to raise ineffective assistance of counsel on appeal; and (4) the prosecutor knowingly used perjured testimony to obtain the conviction. ECF No. 1 at 14-23.

Nor do the other, amended petitions in this case invoke the claims petitioner now seeks to add. The court determined that those petitions raised only the claims identified above: (1) the evidence introduced at petitioner's trial is insufficient to support his conviction; (2) petitioner's trial and appellate counsel rendered ineffective assistance; and (3) prosecutorial misconduct violated petitioner's right to due process. These are also the claims as respondent understood them, as evidenced by his answer. ECF No. 73.

Finally, the court finds that the other circumstances contemplated in 28 U.S.C. § 2244(d) do not apply. That is, petitioner has not shown that: (1) some impediment to filing these claims created by state action was removed; (2) the claims rely on a constitutional right that was newly recognized by the Supreme Court and made retroactive on collateral review; or (3) that he could not have recognized the factual predicate of these claims by the exercise of due diligence until recently. 28 U.S.C. § 2244(d). And, although the Ninth Circuit has recognized an exception to the limitations period for claims of actual innocence, *see Lee v. Lampert*, 653 F.3d 929 (9th Cir.

2011), his motion to amend does not appear to explicitly invoke that theory. And even if it could be construed to do so, the court finds that petitioner has not produced sufficient evidence to establish that he falls within the narrow class of cases that would qualify for this exception. *Id.* at 937 ("In order to present otherwise time-barred claims to a federal habeas court . . . a petitioner must produce sufficient proof of his actual innocence to bring him within the narrow class of cases . . . implicating a fundamental miscarriage of justice.") (internal quotations marks and citations omitted).

**IV. Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that petitioner's motions for discovery (ECF No. 81) and factual innocence (ECF No. 82) are DENIED.

Further, IT IS RECOMMENDED that:

1. Petitioner's third amended petition (ECF No. 80), construed as a motion to amend, be DENIED;

2. Petitioner's motion to amend (ECF No. 85) be DENIED; and

3. Petitioner's application for a writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section

/////

/////

/////

2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  September 20, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE